# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. KICHLER,<br>                  Plaintiff,<br>v.<br><br>WIELAND INTERNATIONAL, a<br>Michigan Corporation, and<br>NAVISTAR FINANCIAL<br>CORPORATION, an Illinois Corporation,<br><br>                  Defendants. | CIVIL ACTION NO. 3:07-118J<br><br>JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION AND ORDER

**Gibson, J.**

### SYNOPSIS

This matter comes before the Court on Defendant Wieland International's [1] (hereinafter "Wieland's") motion to dismiss under Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6), Document No. 8; Wieland's motion for a more definite statement, pursuant to Fed. R. Civ. P. 12(e), Document No. 11; and Defendant Navistar Financial Corporation's (hereinafter "Navistar's") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Document No. 6. For the reasons set forth below, the Court will deny Defendants' motions and transfer this case, in the interest of justice, to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a).

---

[1] Wieland states that it is improperly identified in the caption, and is properly identified as Wieland Sales, Inc. Document No. 8; Document No. 9 ¶ 2; Document No. 10. The Court notes that Navistar is also incorrectly identified in the caption, as it is a Delaware corporation. Document No. 7 p.1.

1

**HISTORY**

Plaintiff states that he is a commercial truck driver who resides in "suburban Johnstown, Somerset County, PA 15905." Document No. 3 ¶¶ 1-6. Wieland is a Michigan corporation with its principal place of business in Bay City, Michigan. Document No. 9 ¶¶ 3-4. Navistar is a Delaware corporation with its principal place of business in Illinois.[2] Document No. 3 ¶ 3; Document No. 7 p.1.

Plaintiff purchased a "2004 International Truck Tractor Model No. 9900 I SFA 6x4" from Wieland on November 23, 2003.[3] Document No. 3 ¶ 7. Wieland had "directed" Plaintiff to Navistar "for the financing of this transaction." *Id.* at ¶ 12. When Plaintiff arrived in Saginaw, Michigan to take delivery of his new vehicle, he discovered that "numerous aspects of the truck tractor varied from the specifications that he ordered." *Id.* at ¶ 9. Specifically, he noted a wheelbase a foot shorter than specified; the absence of "[d]river-controlled locking rear ends"; different and lighter-duty tires than those ordered; fuel capacity 200 gallons less than specified; a low-profile fifth wheel hitch, instead of the high-profile hitch Plaintiff had ordered; the absence of various comfort, convenience and safety features specified by Plaintiff; and lower-capacity storage batteries and alternator than he had requested. *Id.* at ¶ 24. Plaintiff also alleges that Wieland "falsely represent[ed]" that the transmission model he wanted "was not available," and that therefore the truck was delivered with another model transmission. *Id.* at ¶ 24(p).

Plaintiff states that "in order to salvage the transaction," Wieland employees promised to obtain

---

[2] Plaintiff alleges that Navistar is an Illinois corporation. Document No. 3 ¶ 3. The Court assumes that the *pro se* Plaintiff confused principal place of business with place of incorporation.

[3] Wieland's president states that the purchase occurred on November 20, 2003. Document No. 9 ¶ 24.

2

the parts necessary to bring the truck into conformance with his specifications, and the parties agreed that Plaintiff would use the truck until the changes could be made. *Id.* at ¶¶ 10-11, 20. Plaintiff kept Navistar apprised of the situation and, indeed, Navistar "agreed to modify the financial particulars" of the financing agreement, telling Plaintiff that Navistar "was closely interested in monitoring its security [*i.e.*, the truck]." *Id.* at ¶ 14-15.

Subsequent to the delivery of the vehicle, Plaintiff states that Wieland took the position that Plaintiff had accepted the vehicle "as is," and that Wieland therefore had no further obligations regarding the disparity between the truck's specifications as-delivered and as-ordered. *Id.* at ¶ 21. Plaintiff further states that Navistar did not assist Plaintiff in his dispute with Wieland and, in fact, that Defendants "engage[d] in a course of dealing that is tolerant of [Wieland's] use of forged or otherwise questionable documents to expedite customer transactions." *Id.* at ¶¶ 18-19.

Plaintiff applied for *in forma pauperis* status on May 24, 2007, Document No. 1; it was granted by this Court on May 30, 2007. Document No. 2. Plaintiff commenced the instant diversity action *pro se* on May 30, 2007, alleging breach of contract, conspiracy and apparently fraud, and seeking compensation for repairs and lost profits of $105,000 and punitive damages of $75,000. *Id.* at ¶¶ 8, 10-11, 16-21, 23-27. Navistar filed a motion to dismiss or for a more definite statement on September 17, 2007. Document No. 6. Wieland filed its motion to dismiss on September 18, 2007, Document No. 8, and a motion for a more definite statement on October 1, 2007. Document No. 11. Wieland and Navistar filed motions to stay discovery pending resolution of their earlier motions on October 23 and 24, respectively. Document No. 15; Document No. 16. Plaintiff has not filed responses to any of Defendants' motions.

3

The Court first takes up Wieland's motion to dismiss for lack of venue, as its resolution is dispositive of the Court's involvement with this case.

## STANDARD OF REVIEW AND BURDEN OF PROOF

When considering a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b), the Court "'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).[4] All parties may, however, "submit affidavits in support of their positions." *Heft v. AAI Corp.*, 355 F.Supp.2d 757, 762 (M.D. Pa. 2005) (citations omitted). Notwithstanding Wieland's assertion to the contrary,[5] Document No. 10, p. 9, it is well-settled within the Third Circuit that the moving party bears the burden of proving that venue is improper. *See, e.g., Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982); *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005); *Heft*, 355 F. Supp. 2d at 762 n.4. In general, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

---

[4] It should be noted that both of the cited cases concern motions to dismiss for lack of personal jurisdiction. *Pinker*, 292 F.3d at 368; *Carteret*, 954 F.2d at 142 n.1; *see also* Fed. R. Civ. P. 12(b)(2). This standard has gained some currency within this Circuit in the review of 12(b)(3) motions. *See Heft v. AAI Corp.*, 355 F.Supp.2d 757, 762 (M.D. Pa. 2005); *Fellner v. Philadelphia Toboggan Coaster, Inc.*, Civil Action No. 05-1052, 2005 WL 2660351, at *1, 2005 U.S. Dist. LEXIS 23839, at *4 (E.D. Pa. Oct. 18, 2005). However, the Court of Appeals for the Third Circuit has never expressly addressed whether this standard of review for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) is the proper standard.

[5] Wieland's citation of *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985) is inapposite, as it deals with Plaintiff's burden of demonstrating contacts with the forum state sufficient to establish personal jurisdiction. Indeed, the only question before the court in *Gehling* was personal jurisdiction, which necessitates a substantially different inquiry from the instant question of venue. *See id.* at 540, 542.

4

## DISCUSSION

The Court has subject matter over the instant action due solely to diversity of citizenship.[6] In such cases, "except as otherwise provided by law," venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

No other statute applies to this case; venue is wholly dependent upon the workings of § 1391(a). Section 1391(a)(1) is inapplicable since there is no claim that any, let alone all of the Defendants are residents of the Western District of Pennsylvania and, indeed, their residency anywhere in Pennsylvania would destroy diversity. Section 1391(a)(3) also does not apply, as this case could have been brought in the Eastern District of Michigan. *See* 28 U.S.C. § 102(a)(2). Complete diversity would still exist. The Michigan court would have general jurisdiction over Wieland, since it was incorporated "under the laws of the state." Mich. Comp. Laws. § 600.711(1). The Michigan court would also have at least specific personal jurisdiction over Navistar, as Michigan law provides for long-arm jurisdiction over a company that "transact[s] any business within the state," Mich. Comp. Laws. § 600.715, and, moreover, Navistar appears to satisfy the Fourteenth Amendment's Due Process Clause requirement that it have "certain minimum contacts with [the forum state] such that the maintenance of the suit does

---

[6] Plaintiff has pled an amount in controversy in excess of $75,000 and, within the meaning of 28 U.S.C. § 1332(c)(1), that no Defendant is a citizen of Pennsylvania, the state of Plaintiff's residence. That is sufficient to establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

not offend traditional notions of fair play and substantial justice." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007)(citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Specifically, Navistar appears to have "purposefully directed" its financing activities at Michigan; Plaintiff's claim "arise[s] out of or relate[s] to" Navistar's financing activities in Michigan; and Plaintiff's allegations that Wieland directed him to Navistar, and that the two Defendants worked together to engineer Plaintiff's purchase of the vehicle in Michigan, suggest that "assertion of jurisdiction" by the Michigan court would "comport[] with fair play and substantial justice." *Marten v. Godwin*, 499 F.3d at 296 (quotation marks and citations omitted)(summarizing the requirements for the establishment of "minimum contacts").

Venue in this district can therefore only be established by operation of § 1391(a)(2). Plaintiff's truck is certainly property, but it is in no sense situated in Pennsylvania; instead, insofar as the Court can determine, it is being used by Plaintiff "to haul freight across the United States and Canada." *See* Document No. 3 ¶ 9. Moreover, it was at least initially titled in Michigan. Document No. 9 ¶ 29. To finally decide whether venue in the instant action lies in this district, the Court must therefore determine whether "a substantial part of the events or omissions giving rise" to Plaintiff's claim occurred in the Western District of Pennsylvania.

The current iteration of the federal general venue statute, 18 U.S.C. § 1391, is an attempt to resolve the tension between the competing judicial interests of economy and fairness. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). The previous statute had in almost all cases allowed only one venue, thereby generating substantial amounts of "wasteful litigation" over the question of which venue was best. *Id.* (citation omitted). The present law seeks to limit unnecessary

6

litigation by allowing suit to be brought in multiple fora so long as certain conditions are satisfied. *See Daniel v. Am. Bd. Emergency Medicine*, 428 F.3d 408, 432 (2d Cir. 2005) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)) ; *First Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

Statutorily specified venue is generally designed to "protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Cottman*, 36 F.3d at 294 (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979))(emphasis in original). Such is the case with 28 U.S.C. §1391. Specifically, the substantiality requirement in §1391(a)(2) is "intended to preserve the element of fairness so that a defendant is not hailed into a remote district having no real relationship to the dispute." *Cottman*, 36 F.3d at 294. The term "substantial" is to be taken "seriously" by the district courts, and the current law is "at most a marginal expansion" of the previous general venue provision. *Daniel*, 428 F.3d at 432 (citations omitted). Indeed, determination of substantiality under the current rule "may at times seem to take on [the] flavor" of the older "best forum" analysis. *Cottman*, 36 F.3d at 294 (citing *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994); *Gulf Ins.*, 417 F.3d at 357; *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993)(holding that venue was proper where the relevant events and omissions "predominantly" took place)).

In determining whether "events or omissions giving rise to the claim" are substantial, it is first necessary to look to the nature of the dispute. *Cottman,* 36 F.3d at 294. While not all substantial events or omissions are triggering events, events that trigger a dispute are substantial. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 (1st Cir. 2001) (holding that the sinking of a yacht was significant in an insurance contract dispute triggered by the sinking, even though the sinking had

7

nothing to do with the contract itself); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868, (2d Cir. 1992) (holding that the protections of the Fair Debt Collection Practices Act were triggered by receipt of a collection notice); *Cottman*, 36 F.3d at 295 (holding that a triggering event in a trademark case is the "unauthorized passing off" of the illicitly trademarked item).[7] Once the substantiality of the events or omissions has been established, it is necessary to determine if a substantial part of those events occurred in the forum at issue. *Cottman*, 36 F.3d at 294-95 (citing *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C.Cir. 1993); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868,(2d Cir. 1992)); *see also Daniel*, 428 F.3d at 432, (citing *Gulf Ins.*, 417 F.3d at 357)(advocating a "two-part inquiry" wherein the court (1) identifies the "nature of the claims" and the acts or omissions that allegedly engendered them and (2) determines whether a "substantial part of those acts or omissions occurred in the district where suit was filed").

The action at bar sounds primarily in contract. In determining proper venue for a contractual dispute, the primary factors to be considered are "where the contract was to be negotiated[8] or executed, where the contract was to be performed, and where the alleged breach occurred." 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806.1, at 205-12 (3d

---

[7] Trademark violations are of course federal questions. Section 1391(a) applies to actions "founded only on diversity of citizenship," so in *Cottman* the court applied § 1391(b) instead. *Cottman*, 36 F.3d at 293-94. However, "[s]ection 1391(b)(2) repeats precisely the wording of section 1391(a)(2)." *Id.* at 294; *see also* 18 U.S.C. § 1391(b).

[8] Wright & Miller, citing D.C.N.Y. cases, states that the electronic communications sent from and received within a district are "often deemed substantial events" for purposes of establishing venue. 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806.1, at 212 & n.15 (3d ed. 2007). A recent case from the Eastern District of Pennsylvania takes the different and, to this Court persuasive view, that negotiation of a contract via e-mail and telephone may be "logistically and conceptually distinct from the circumstances relating to the alleged breach" of the contract in question. *TJF Assoc. Ltd., v. Rotman*, Civ. Action No. 05-705, 2005 WL 1458753, at *7, 2005 U.S. Dist. LEXIS 11943, at *22 (E.D. Pa. June 17, 2005).

ed. 2007); *see also Cottman*, 36 F.3d at 295. The contract of sale between Plaintiff and Wieland was negotiated at least in part and fully executed in Michigan. The subsequent agreement between Plaintiff and Wieland that Plaintiff would use the truck until such time as Wieland could bring it into conformance with Plaintiff's original specifications was wholly negotiated and, to the extent that it was formalized, executed in Michigan as well. If Plaintiff was the last to sign the Navistar financing agreement, or if for some other reason the "last act to bring the agreement into legal effect" took place in Michigan, the "place of contracting" for the Navistar agreement was also Michigan. *See Frankel v. Johns-Manville Corp.*, 257 F.2d 508, 510 (3d Cir. 1958). In any event, there is nothing on the record that indicates that any agreement between Plaintiff and either Defendant was executed in Pennsylvania.

The pertinent part of the performance of both contracts, to the extent they have been performed, occurred in Michigan, where Wieland delivered the truck to Plaintiff and Navistar furnished the financed portion of the payment price to Wieland. Indeed, the original certificate of title to the truck, encumbered by Navistar's lien, was issued by the Michigan Department of State. Document No. 3 ¶¶ 8, 15; Document No. 9 ¶ 29. The triggering event of the instant action, Wieland's breach of its contract with Plaintiff by the tender of non-conforming goods and its subsequent failure to remedy that non-conformance occurred only in Michigan. Notably, although Plaintiff may have been affected in Pennsylvania by Wieland's alleged refusal to remedy the breach, "the omissions bringing about this result actually occurred in Michigan." *See Cottman*, 36 F.3d at 295.

This Court recently considered the proper venue of a case in which the plaintiff, a Pennsylvania company, had sued in the Western District of Pennsylvania for breach of a construction contract made with a Virginia firm. *Frank M. Sheesley Co. v. HES Constructors, Inc.*, Civ. Action No. 3:06-198,

9

2007 WL 2823482, 2007 U.S. Dist. LEXIS 71387 (W.D. Pa. Sept. 26, 2007). In that case, the contract was entered into, performed, and allegedly breached in Virginia, while the contract-related activities in Pennsylvania were limited to Sheesley's preparation of the initial bid and the continued operation of its business. *Sheesley*, 2007 WL 2823482, at \*1, \*4 -\*5, 2007 U.S.Dist. LEXIS 71387, at \*1, \*14-\*15, \*17-\*18. Under those circumstances, the Court found that the acts that occurred in Pennsylvania, "if substantial at all, simply [did] not comprise a substantial part of the events or omissions that gave rise to the instant claim," and transferred the case to the Eastern District of Virginia. *Sheesley*, 2007 WL 2823482, at \*1, 2007 U.S.Dist. LEXIS 71387, at \*18.

The case at bar has even less connection to the Western District of Pennsylvania than *Sheesley*. Although Plaintiff may have, while in Pennsylvania, engaged in some of the negotiations leading up to his purchase, he certainly did not prepare detailed bid specifications as in *Sheesley*. *See TJF Assoc. Ltd., v. Rotman*, Civ. Action No. 05-705, 2005 WL 1458753, at \*7, 2005 U.S. Dist. LEXIS 11943, at \*22 (E.D. Pa. June 17, 2005)(holding that negotiation of a contract via e-mail and telephone was "logistically and conceptually distinct from the circumstances relating to the alleged breach" of the contract in question). Plaintiff has suggested no other actions by any party to the case that both occurred in Pennsylvania and gave rise to his claims. To the extent that Plaintiff may have sent payments to either Wieland or Navistar, the Court notes that these payments did not give rise to the dispute; instead, the triggering events were the alleged non-performance of Wieland and Navistar, none of which occurred in the Western District of Pennsylvania.

## CONCLUSION

Since a substantial part of the events or omissions giving rise to Plaintiff's claims did not occur

10

in this district, venue cannot lie. The Court must therefore either dismiss at least Plaintiff's action against Wieland or, in the interest of justice, transfer the case in whole or in part to a district "in which it could have been brought." 28 U.S.C. § 1406(a). The Court finds that Plaintiff's claims against the two Defendants are so closely related that if for no other reason than judicial economy they should not be severed at this point. *See Mesa Computer Utils., Inc. v. Western Union Computer Utils., Inc.*, 67 F.R.D. 634, 638 (D. Del. 1975)(citations omitted).

The Court also finds that Plaintiff brought his action in good faith and should not suffer the hardship of a dismissal. That hardship could be substantial, since Michigan has adopted the Uniform Commercial Code with its four-year the statute of limitations for "breach of any contract for sale," Mich. Comp. Laws § 440.2725(1); U.C.C. § 2-725(1), and Wieland's initial tender of allegedly nonconforming goods occurred on either November 20 or November 23, 2003. If the Court were to dismiss and Plaintiff did not re-file almost immediately in Michigan the largest portion, if not all of his action would be time-barred. Congress enacted § 1406(a) specifically to avoid such a result. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-67, 82 S.Ct. 913, 915-16, 8 L.Ed.2d 39, 41-42 (1962)(transfer instead of dismissal is allowed so that plaintiff will "not be penalized by . . . time-consuming and justice-defeating technicalities" such as expired statutes of limitations)(quotation marks and citation omitted) .

As previously explained, this case could have been brought in the Eastern District of Michigan. For the reasons given above, the Court finds transfer of the case to that district to be in the interest of justice. The Court notes that 28 U.S.C. § 1406(a) allows such transfer even in the absence of personal jurisdiction over Defendants; it therefore need not decide the issue of personal jurisdiction raised by

11

Wieland. *See Goldlawr*, 369 U.S. at 465-66, 82 S.Ct. at 915, 8 L.Ed.2d at 42. The Court also notes, however, that even if it did find that it lacked personal jurisdiction over Wieland, the interest of justice would nonetheless require transfer of the case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1631. *See Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002).

## ORDER

**AND NOW**, this 19th day of November, 2007, it is hereby **ORDERED** that the above-captioned action is transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a); Defendant Wieland's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) is **DENIED**; Defendant Wieland's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (6) and its motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) are **DENIED** as moot; and Defendant Navistar's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and for a more definite statement pursuant to Fed. R Civ. P. 12(e) are **DENIED** as moot.

BY THE COURT:

*/s/ Kim R. Gibson*

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

13